**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PAUL S. KLEIN, | 3:08-CV-177-ECR (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| HOWARD SKOLNIK, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendant Richard Tate's Motion to Dismiss, or in the Alternative Motion for Summary Judgment. (Doc. #48.)[1] Plaintiff has opposed (Doc. #53), and Defendant has replied (Doc. #56). Also before the court is Plaintiff's Motion for Summary Judgment. (Doc. #55.) Defendant has opposed (Doc. #57), and Plaintiff has replied (Doc. # 58.)[2] After a thorough review, the court recommends that Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Paul S. Klein was in custody of the Nevada Department of Corrections (NDOC). The events at issue occurred while Plaintiff was an inmate at the

---

[1] Refers to court's docket number.

[2] Also pending before the court is Plaintiff's Motion to Add Additional Evidence in Support of His Reply. (Doc. #60.) Defendant has opposed (Doc. #61), and Plaintiff has replied (Doc. #62). The court grants Plaintiff's motion and considers the evidence submitted.

1  Southern Dessert Correctional Center (SDCC). (Pl.'s Compl. 1 (Doc. #19).) Plaintiff, a *pro se*
2  litigant, brings this action pursuant to 42 U.S.C. § 1983. On April 4, 2008, Plaintiff filed a
3  complaint containing four counts, seeking damages, declaratory relief and injunctive relief
4  against various NDOC administrators and employees in their individual capacities. (*Id*. 2-4,
5  9.) In a screening order issued September 23, 2008, the court dismissed Counts II through IV
6  and all named defendants except for Defendant Tate. (Doc. #18.)

7  In Count I, the sole remaining count in Plaintiff's complaint, Plaintiff claims that
8  Defendant Tate "blocked, took, and destroyed" a Discover Magazine subscription renewal bill
9  in violation of the First Amendment and Fourteenth Amendment. (Pl.'s Compl. 5-7.)

10  In general, if a district court considers evidence outside the pleadings when ruling on
11  a Rule 12(b)(6) motion to dismiss, the motion will be treated as one for summary judgment.
12  Fed. R. Civ. P. 12(d). Upon such conversion, the parties must be notified and given a
13  reasonable opportunity to present evidence. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th
14  Cir. 1996). Defendant filed his Motion to Dismiss, or in the Alternative Motion for Summary
15  Judgment on July 13, 2009. (Doc. #48.) On July 14, 2009, the parties were provided with
16  notice of the motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th
17  Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (Doc. #49.) Because the court
18  considers evidence outside the pleadings, Defendant's motion will be treated as one for
19  summary judgment. Plaintiff received notice, a reasonable opportunity to present evidence,
20  opposed Defendant's motion, and subsequently moved for summary judgment himself. (Docs.
21  #53, 55.)

## II. LEGAL STANDARD

23  The purpose of summary judgment is to avoid unnecessary trials when there is no
24  dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d
25  1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving
26  party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*,
27  477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery
28

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved.  *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248.  Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248.  As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*.  Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*,

477 U.S. at 323.

## III. DISCUSSION

Plaintiff alleges that Defendant Tate "blocked, took, and destroyed" a Discover Magazine subscription renewal, which offered Plaintiff a discounted subscription rate, in violation of the First Amendment and Fourteenth Amendment. (Pl.'s Compl. 5.) Plaintiff claims that the envelope from Discover was clearly marked "first class" and did not constitute "bulk mail." (*Id.*) Plaintiff asserts that due process is required before any mail addressed to a prisoner is taken and destroyed by prison officials. (*Id.* at 6.) Defendant argues that Plaintiff cannot establish that Defendant's conduct resulted in the deprivation of Plaintiff's constitutional rights. (Def.'s Mot. for Summ. J. 9 (Doc. #48).)

Plaintiff adamantly claims that his renewal billing statement for Discover magazine was sent in an envelope marked "First Class Mail." (Pl.'s Compl. 5; Pl's Opp. to Summ. J. 11 (Doc. #53).) However, the evidence submitted by Defendant indicates otherwise. Plaintiff states that he grieved the incident at issue in grievance number 200695311. (Pl.'s Comp. 5.) The official response to this grievance states that "inmates are not allowed to [receive] bills unless they are [sent] in an envelope." (Def.'s Mot. for Summ. J., Ex. B at 24 (Doc. #48).) Moreover, the official response at the first level of review advises Plaintiff that he should "write to Discover and request that they send [his] renewal subscription via First Class Mail" because "[t]his will ensure [Plaintiff] receives [his] materials." (*Id.*) These official responses demonstrate that Plaintiff's renewal was not sent in an envelope or by way of First Class Mail. As the non-moving party, Plaintiff must put forth evidence beyond his allegations to demonstrate that there is a genuine issue of material fact with respect to whether his renewal was sent via First Class Mail. Plaintiff points to the remaining half of the billing statement delivered to him as evidence that the renewal was sent via First Class Mail. (Pl.'s Opp. to Summ. J. 11, 48.) However, neither this portion of the billing statement nor any other evidence submitted by Plaintiff actually shows that the renewal was sent in an envelope via First Class Mail. Plaintiff fails to support his allegation with any factual support, and Defendant has shown an absence

4

of a genuine issue of material fact. Thus, the court will address the NDOC's practice of removing subscription renewals from the magazines themselves but will not address removal of renewals sent in an envelope via First Class Mail.

## A.    First Amendment

"Publishers have a First Amendment right to communicate with prisoners by mail, and inmates have a First Amendment right to receive this mail." *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005). However, a prisoner's "constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990). A prison may adopt regulations or practices impinging on a prisoner's constitutional rights if those regulations are reasonably related to legitimate penological interests, such as security, order and rehabilitation. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). To determine if a prison regulation is reasonably related to a legitimate penological interest, the court considers the following factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the rights that remain open to prison inmates"; (3) what impact the requested accommodation "will have on guards and other inmates, and on the allocation of prison resources generally"; and, (4) whether the "absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner v. Safley*, 482 U.S. 78, 90 (1987). The first factor is the most important. *Prison Legal News*, 397 F.3d at 699.

With respect to the first factor, Defendant argues that the prison regulation authorizing the removal of magazine inserts is rationally related to a legitimate governmental interest. (Def.'s Mot. for Summ. J. 10.) Inmate mail is processed pursuant to NDOC Administrative Regulation (AR) 750. (*Id.* at 3.) Under AR 750.03-1.6, subscription renewal cards and other offers for subscriptions to magazines are removed prior to distribution of the magazine to the inmate. (*Id.* at 3, Ex. A at 10.) According to Defendant, the NDOC removes subscription

5

renewal cards and other offers for subscriptions to magazines because prisoners subscribe to publications (presumably, indicating they should be billed later) and then fail to pay for the subscription, leaving the NDOC liable for the subscription. (*Id.* at 3.) Defendant asserts that Plaintiff continues to receive his authorized publications despite the removal of the renewal card. (*Id.* at 10.)

Plaintiff contends that Defendant's assertion that the NDOC would be held responsible for unpaid prisoner subscriptions is without merit and is not a legitimate governmental interest. (Pl.'s Opp. to Summ. J. 9 .) Plaintiff argues that Defendant has failed to present proof that the NDOC or Defendant Tate has been held responsible in some way for a prisoner's unpaid publication order. (*Id.* at 10.)

The NDOC regulation requiring the removal of subscription renewal inserts in magazines is rationally related to a legitimate governmental interest. Even if the NDOC is not held financially responsible for unpaid prisoner subscriptions, the prison has a legitimate interest in the rehabilitation of prisoners by reducing the opportunities for prisoners to defraud others by ordering goods for which they are unable or unwilling to pay. In the official response to Plaintiff's informal grievance number 200797071, the NDOC indicates that the prison has become the "Fraud Police" because of "the number of inmates that attempt to defraud the system." (Def.'s Mot. for Summ. J., Ex. B at 20.) In light of the "substantial deference" a court must accord "to the professional judgment of prison administrators," the court finds that the prison regulation at issue is rationally related legitimate penological interests. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The first factor weighs in favor of Defendant.

With respect to the second factor, Plaintiff may renew his magazine subscription through means other than the insert included with the magazine. Publications and magazines may be renewed by prepaid subscription, or the subscription renewal form may be sent to Plaintiff via First Class mail from the publisher. (Def.'s Mot. for Summ. J. 10, Ex. A at 9,10, Ex. B. at 24.) Accordingly, the second factor also weighs in Defendant's favor.

/ / /

1    With respect to the third factor, Defendant argues that not removing the subscription
2 renewals would subject the NDOC to potential financial liability for unpaid subscriptions.
3 (Def.'s Mot. for Summ. J. 10.)  However, Defendant fails to provide evidence to support this
4 conclusory assertion.  Thus, the court does not find Defendant's argument persuasive.  *See*
5 *Shakur v. Schriro*, 514 F.3d 878, 887 (9th Cir. 2008)(concluding that the Arizona Department
6 of Corrections failed to provide adequate evidence supporting its assertion that increased costs
7 would result from plaintiff's requested accommodation).

8    Issuing magazines to inmates with the included renewal cards would not impact prison
9 guards or the expenditure of prison resources significantly.  Because the NDOC administrative
10 regulations indicate that other types of inserts (such as stickers, lipstick, and perfume) must
11 be removed in addition to subscription renewal cards, prison resources may actually be
12 conserved by leaving the renewal cards in the magazines rather than removing them.  (Def.'s
13 Mot. for Summ. J., Ex. A at 11 (AR 750.03-1.6).)   Additionally, the impact of leaving the
14 renewal cards in the magazines on inmates would be quite beneficial.  Allowing prisoners to
15 receive magazines with the included renewal cards would provide inmates another way to
16 access subscription renewals.  In deciding a motion for summary judgment, the court must
17 view all evidence and any inferences arising from the evidence in the light most favorable to the
18 nonmoving party.  *Bagdadi*, 84 F.3d at 1197.  Therefore, because not removing the renewal
19 card would only minimally impact prison resources while benefitting inmates, the third factor
20 weighs in Plaintiff's favor.

21   With respect to the fourth factor, Plaintiff bears the burden of showing that there are
22 obvious, easy alternatives to the regulation. *Mauro v. Arpaio*, 188 F.3d 1054, 1062 (9th Cir.
23 1999). If Plaintiff can identify an alternative that fully accommodates the right at a *de minimis*
24 cost to valid penological goals, the prison policy is an exaggerated response. *Turner*, 482 U.S.
25 at 90-91.  Here, Plaintiff does not offer an alternative to the current NDOC policy.  Rather,
26 Plaintiff primarily argues that other NDOC facilities allow magazine renewals to be issued to
27 inmates and, thus, the SDCC should do so as well.  (Pl.'s Opp. to Summ. J. 13-16.)  Plaintiff's
28

argument merely shows his disagreement with the SDCC and fails to identify an easy alternative to the regulation. The fourth factor weighs in Defendant's favor.

The court concludes that Plaintiff has not established a genuine issue of material fact that the magazine renewal insert policy violates his First Amendment rights. Because three of the four factors weigh in Defendant's favor, Defendant has shown that the mail policy is reasonably related to legitimate penological objectives. Therefore, Defendant should be granted summary judgment on Plaintiff's First Amendment claim.

**B.    Fourteenth Amendment**

Plaintiff also argues that Defendant failed to provide Plaintiff notice that the magazine renewal was removed as required by the due process protections of the Fourteenth Amendment. (Pl.'s Compl. 6.)

The Supreme Court has held that "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417-18 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). Specifically, an inmate has a "due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities." *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999). It is "not the prison's rejection of [inmate mail] that makes out a procedural due process claim; it is the *lack of notice* of that rejection." *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002)(emphasis in original).

Defendant's removal of Plaintiff's Discover magazine subscription renewal bill from inside the magazine does not constitute the withholding mail. Under AR 750.03-1.6, "[i]nserts within a magazine will be removed prior to issue" and disposed of in accordance with AR 750.06. (Def.'s Mot. for Summ. J., Ex. A at 11.) Courts have found that a prisoner possesses a liberty interest, and thus, is entitled to notice when a magazine is withheld entirely or when inmate mail is censored. *Frost*, 197 F.3d at 353 (holding that a prisoner has a "due process liberty interest in receiving notice that his incoming [magazines are] being withheld by prison authorities" based on obscenity concerns); *Procunier*, 416 U.S. at 417-18 (holding that a prison

8

official's "decision to censor or withhold delivery of [inmate mail] must be accompanied by minimum procedural safeguards"). Here, however, Plaintiff's magazine was delivered, in its entirety, without any alteration to the substantive content. Receiving the renewal card, itself, within the magazine fails to amount to a liberty interest. Consequently, the mere removal of the renewal card from the magazine by prison officials does not require the procedural protections afforded by the Fourteenth Amendment. Therefore, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.[3]

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #48).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. #55).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: January 22, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] The court does not find it necessary to consider the remaining defense raised by Defendants at this time.